725 F.2d 1263
 26 Wage & Hour Cas. (BN 984, 99 Lab.Cas. P 34,493
 James V. DOLAN and Milton L. Lee, individually and on behalf
of all others similarly situated, Plaintiffs-Appellants,
v.
PROJECT CONSTRUCTION CORPORATION, A subsidiary of
Stearns-Roger Corporation, Defendant-Appellee.
 No. 83-1704.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 20, 1984.
 
 1
 Sander N. Karp, of Karp, Goldstein & Stern, Denver, Colo., for plaintiffs-appellants.
 
 
 2
 Bruce W. Sattler, Denver, Colo. (Warren L. Tomlinson and Jeffrey T. Johnson, Denver, Colo., with him on brief), of Holland & Hart, Denver, Colo., for defendant-appellee.
 
 
 3
 Before BARRETT and LOGAN, Circuit Judges, and BOHANON, Senior District Judge*.
 
 
 4
 BOHANON, District Judge.
 
 
 5
 Beginning in March, 1980, the defendant-appellee began construction on a 226 Million Dollar natural gas processing plant located approximately fifteen miles northwest of Evanston, Wyoming. This plant was known as the Amoco-Whitney Canyon Project. To construct this facility, defendant Project Construction Corporation employed approximately 1,500 hourly employees on a daily basis until the work was substantially completed in December, 1982.
 
 
 6
 The plaintiffs herein were employed during the construction of the natural gas processing plant and allege that they were denied certain wages and overtime compensation pursuant to Secs. 6 and 7 of the Fair Labor Standards Act (hereinafter FLSA), 29 U.S.C. Secs. 206 and 207.[1]
 
 
 7
 Upon the filing of the complaint, plaintiff served upon the defendant a set of interrogatories including the following demand for information:
 
 
 8
 "State the name and last known address of each employee of the defendant who was employed by said defendant at the the Amoco-Whitney Canyon Project near Evanston, Wyoming and who was employed at said site within the last two years including the date of hire, date of termination, days and hours of each day worked, the wage paid said employee on each date of employment within the last two years or until terminated or laid off, the classification or job description of said employee, and said employee's last known address. In lieu thereof, the defendant may produce copies of employment, payroll, and/or hourly time records which reflect the above information pursuant to the above rule."
 
 
 9
 Plaintiffs' First Set of Interrogatories.
 
 
 10
 Defendant immediately moved for a Protective Order in lieu of answering the interrogatories. Plaintiffs, meanwhile, moved for Leave to Give Notice to Class Members. Both of these motions were set before the federal magistrate pursuant to an Order of Reference by the district court.
 
 
 11
 During the hearing on the motions, the magistrate held that the power to authorize the sending of notice to putative plaintiffs in collective employee suits under the FLSA could not be inferred from Section 216(b), 29 U.S.C. Sec. 216(b), which does not expressly provide for such notice. He therefore denied plaintiffs' Motion for Leave to Give Notice.
 
 
 12
 Upon making the determination that notice could not be given, the magistrate held that no purpose would be served by the defendants' response to the first set of interrogatories and consequently granted the protective order.
 
 
 13
 The plaintiffs sought review of the magistrate's ruling before the district court and upon review of the record, the district court issued an Order Affirming the Magistrate.[2]
 
 
 14
 Pursuant to the provisions of 28 U.S.C. Sec. 1292(b) plaintiffs-appellants present this interlocutory appeal from the district court order denying the sending of notice to potential plaintiffs in a collective action described in 29 U.S.C. Sec. 216(b). We affirm.
 
 
 15
 Initially, this case must be distinguished from a class action under Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides that upon the establishment of a class a subsequent judgment binds all members of the class unless they have expressly opted out of the class action. Therefore, due to the res judicata effect of a class action under the provisions of Rule 23, notice to the putative class of the pendency of the action is required to protect the individual interests of the class members.
 
 
 16
 However, 29 U.S.C.A. Sec. 216(b) (hereinafter Sec. 216(b)) provides, inter alia:
 
 
 17
 "... An action to recover the liability prescribed in [this act] ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought...."
 
 
 18
 Therefore, the principal difference between a Rule 23 class action and a Sec. 216(b) collective action is that the similarly situated employee must "opt-in" to be bound by a judgment in a Sec. 216(b) suit. Correspondingly, Sec. 216(b) fails to provide for mandatory notice to similarly situated employees since no individual rights are jeopardized by the FLSA procedures. See Price v. Maryland Casualty Co., 561 F.2d 609 (5th Cir.1977); LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286 (5th Cir.1975).
 
 
 19
 While this court has never ruled on the procedural ramifications of Sec. 216(b), the issue has been before other circuit courts. The Ninth Circuit in Kinney Shoe Corp. v. Vorhes, 564 F.2d 859 (9th Cir.1977), was the first circuit to examine the question of notice in the Sec. 216(b) situation. Kinney held that neither the named plaintiffs, their counsel, nor the court has the power to provide notice to similarly situated employees. See also Partlow v. Jewish Orphans' Home of Southern Cal., 645 F.2d 757 (9th Cir.1981).
 
 
 20
 The second circuit was the next to consider the issue of notice. In Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2nd Cir.1979) the court held that Sec. 216(b) permitted court sponsored notice in appropriate cases.
 
 
 21
 Finally, the seventh circuit examined the issue and a third viewpoint on Sec. 216(b) notices was formulated. In Woods v. New York Life Ins. Co., 686 F.2d 578 (7th Cir.1982) the court ruled that plaintiffs and their counsel can communicate with prospective parties under terms and conditions prescribed by the court, but the notice must not bear the imprimatur of the court.
 
 
 22
 Two other circuits have been presented the issue but have declined to choose between the various judicial interpretations of Sec. 216(b). See Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983); Thompson v. Sawyer, 678 F.2d 257 (D.C.Cir.1982).
 
 
 23
 This court is now presented with the issue and must formulate an opinion on the procedural scope of a Sec. 216(b) action.
 
 Historical Background
 
 24
 The relevant portions of Sec. 216(b) were originally enacted as Section 5 of the Portal-to-Portal Act of 1947, Pub.L. 49, ch. 52, 61 Stat. 87. The primary purpose of the Portal-to-Portal Act was to remedy deficiencies in the interpretation and procedural management of the FLSA as originally formulated in 1938.
 
 
 25
 In its original form, the FLSA made provision for an action by an employee in behalf of himself and other employees similarly situated. However, after decisions by the United States Supreme Court interpreted the FLSA to provide for compensation that historically had not been reimbursed, see Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), a virtual flood of litigation ensued in the form of class actions. Perceiving the flood of litigation as a serious threat to interstate commerce the Congress moved to limit the applicability of the FLSA to certain industry practices. Particularly relevant here, the Congress also limited the class action procedures for filing representative actions. In describing the financial burdens affecting interstate commerce, the House of Representatives' Report stated:
 
 
 26
 "The procedure in these suits follows a general pattern. A petition is filed under section 16(b) [providing for representative actions] by one or two employees in behalf of many others. To this is attached interrogatories calling upon the employer to furnish specific information regarding each employee during the entire period of employment. The furnishing of this data alone is a tremendous financial burden to the employer."
 
 
 27
 H.R.Rep. No. 71, 80th Cong., 1st Session 4 (1947); 1947 U.S.CODE CONG. & AD.NEWS, (80th Cong., 1st Session) 1029, 1032.
 
 
 28
 Not only did Congress disapprove of the normal discovery practices associated with class actions but it also made the specific finding that unless the provisions of the FLSA of 1938 were changed "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged." Sec. 1(a)(7) Portal-to-Portal Act of 1947.
 
 
 29
 The opt-in language of Sec. 216(b) was a direct result of this clear congressional dissatisfaction with the original class action provisions of the FLSA. In fact, the relevant language of Sec. 216(b) was entitled "Representative Actions Banned" in the Portal-to-Portal Act.
 
 
 30
 Clearly, Congress sought to limit the nature of a class action suit based upon an alleged FLSA violation. While still providing for collective and representative actions, it intended to severely limit the burden on the defendant and the participation of the court. Indeed, within the policy statements of the Portal-to-Portal Act of 1947, the following statement is included:
 
 
 31
 Section 1(b)(3)--"[A policy of this Act is] to define and limit the jurisdiction of the courts."
 
 
 32
 Further evidence of the intent to remove the court from active participation in a representative action under Sec. 216(b) is Congress' careful drafting to avoid due process difficulties for potential class members who do not participate in the filed representative actions. See Webster Eisenlohr Inc. v. Kalodner, 145 F.2d 316 (3rd Cir.1944).
 
 Notice
 
 33
 It is upon this historical background that we must structure procedural rules for the administration of actions based upon Sec. 216(b).[3] The policies behind the Sec. 216(b) action are almost diametrically opposed to those involved in a Rule 23, Fed.R. of Civ.Proc. action. The Rule 23 action encourages "litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit." Rodgers v. U.S. Steel Corp., 508 F.2d 152, 163 (3rd Cir.1975). This policy of encouraging a single suit is served by the opt-out procedure. However, the Sec. 216(b) action tends to discourage collective litigation by virtue of the requirement of an affirmative act by each plaintiff.
 
 
 34
 By its very nature, the role of the court is necessarily active in a Rule 23 action. Conversely, the court in a Sec. 216(b) action has only passive duties and limited jurisdiction. Therefore, the role of the court in the Sec. 216(b) action must be supervisory only. It may not order the production of names of all possible plaintiffs for the sole purpose of establishing or notifying the class.[4] Their individual rights are not in jeopardy, and the burden on the defendant is often great. In fact, the specific burden used by Congress in illustrating the unfair discovery burden placed upon the employer consists of interrogatories exactly like those submitted in this case.
 
 
 35
 Similarly, the court is without authority to issue notice to all potential plaintiffs. As the court so aptly explains in Kinney, supra, the court need not protect the due process rights of the non-joining parties and no other function of the court is authorized by statute.
 
 
 36
 The danger of judicial approved notice is apparent even to courts that interpret Sec. 216(b) as providing for discovery for purposes of contacting other plaintiffs. In Woods, the court stated:
 
 
 37
 "But we think it improper for the district court to direct that the notice go out on its letterhead, over the signature of the clerk of court or other judicial officer. We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiffs' allegations have any merit; and we can think of a good reason against it, which is that the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit."
 
 
 38
 To actively involve the trial court in the sending of notice would necessarily involve engrafting certain additional class action procedures to protect the administration of the case from improper certification and issuance of notice. We refuse to begin this involved process without clear congressional guidance.
 
 
 39
 The court in Kinney is undoubtedly correct in its assessment that as originally drafted the Portal-to-Portal Act would prohibit the sending of notice by either party plaintiff or plaintiff's counsel. This is evident in the finding in Section One of the Portal-to-Portal Act that the discouragement of champerty was a goal that was envisioned by the Act. However, recent United States Supreme Court cases regarding legal communication dictate the allowance of a level of reasonable communication by the plaintiff and counsel with those parties he can discover without judicial assistance.
 
 
 40
 The litigants envisioned by Congress in 1947 were primarily interested in pecuniary gain; however, this is not necessarily the situation today. Today Sec. 216(b) actions not only encompass FLSA actions but by specific incorporation are also contained in other remedial legislative acts such as the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. Thus the distinction between solicitation of clients for political objectives and solicitation of clients for pecuniary gain may often blur when applying this statute. Therefore, the court should not be overly anxious to restrict communication with the potential class based upon the economic facts of a particular case. See In re Primus, 436 U.S. 412, 426-31, 98 S.Ct. 1893, 1901-04, 56 L.Ed.2d 417 (1978); United Transportation Union v. Michigan Bar, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971).
 
 
 41
 Additionally, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). Although, Gulf Oil is a case involving a Rule 23 action, the principle of law is applicable to all representative actions.
 
 
 42
 Moreover, the court should be particularly hesitant to restrict written communication in light of the ability to monitor such communications for statements that are likely to deceive. See In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); Ohralik v. Ohio State Bar Assn., 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).
 
 
 43
 But the gulf that separates the restriction of protected communication and active assistance of plaintiff in seeking fellow parties is wide. Under no theory of legal communication is the court justified in undertaking an active role in either discovering or contacting additional parties. The role of the court in Sec. 216(b) actions is one of administering and monitoring the litigation process to ensure a fair trial for all parties.
 
 
 44
 Therefore, the district court's affirmance of the rulings by the magistrate was proper and is hereby AFFIRMED.
 
 
 
 *
 Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation
 
 
 [1]
 Pending in the trial court is the issue of whether the time each employee spent on the worksite before the start of the work day but after delivery by company transportation is compensable by the employer. See Dolan v. Project Const. Corp., 558 F.Supp. 1308 (D.Colo.1983)
 
 
 [2]
 Although the district court seemed to disagree with the magistrate's interpretation of the legal standard, he determined his scope of review was limited. He stated in his order in Dolan, 558 F.Supp. at 1312:
 "The magistrate in this action was confronted with a conflict in persuasive authority and no binding precedent. I am not prepared to rule that because he adopted one posistion in the conflict rather than the other that his ruling is clearly erroneous or contrary to law. Error, if any, would be obscure rather than clear and where the law is unsettled, the ruling is not contrary. Deference to the office of the magistrate under these circumstances and the provisions of Local Rule 17(c)(3) require that I affirm the decision of the magistrate."
 
 
 [3]
 We recognize that the seventh circuit in Woods looked at much of the same historical language and came to a different conclusion as to the import of the language. We specifically reject their analysis as unpersuasive. See Woods, 686 F.2d at 581
 
 
 [4]
 As Kinney noted, 564 F.2d at 864, under the Fed.R. of Civ.Proc. the trial court retains broad discretionary power to control discovery in these cases. Discovery into the patterns and practices of the employer may uncover violations of the statute affecting other employees. We do not intend to limit the discovery that would be normally available in cases of this sort, even though it might reveal the identities of other potential plaintiffs