**The UNITED STATES, Appellant,**

v.

**Lester COOK, et al., Appellees.**

**Appeal No. 86–833.**

United States Court of Appeals,
Federal Circuit.

July 14, 1986.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellant. With him on brief, were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Anne E. Stanley, Asst. U.S. Atty., E.D. of N.Y., of counsel.

Ira M. Lechner, Washington, D.C., argued, for appellees.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

MARKEY, Chief Judge.

Interlocutory appeal from an order of the United States District Court for the Eastern District of New York, Civil Action No. CV-85-1467 (E.D.N.Y. Dec. 23, 1985): (1) ordering the United States to disclose names and addresses of certain federal firefighters and law enforcement personnel, thus enabling plaintiffs to alert those employees of the availability of liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1982) (FLSA); and (2) tolling the statute of limitations "as to any claims of the employees as to whom discovery has been directed." We affirm the portion of the order compelling production and remand the portion purporting to toll the statute with instructions to vacate that portion as prematurely issued.

### Background

Plaintiffs are seven federal firefighters. Because of the enactment of the Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 6(c)(1)(A), 88 Stat. 55 (1974), they became entitled to FLSA overtime pay as of January 1, 1975. *See generally Zumerling v. Devine,* 769 F.2d 745 (Fed.Cir. 1985). They were awarded that overtime pay and now seek liquidated damages. Thus we deal here only with liquidated damages due employees who have been paid for overtime.

With respect to overtime hours worked after January 1, 1978, the 1974 amendments provided that firefighters and law enforcement employees would be entitled to FLSA overtime pay for hours worked in excess of the lesser of (1) 216 hours in a 28 day work period, or (2) "the average num-

ber of hours (as determined by the Secretary of Labor pursuant to [a study mandated by] section 6(c)(3) of the Fair Labor Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calender year 1975." 29 U.S.C. § 207(k).

Relying on the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which struck down the 1974 amendments' application of FLSA to state and local governments, the Secretary of Labor excluded state and local firefighters and law enforcement employees from the study.[1] Based upon the hours worked by those federal employees, the Secretary established 216 as the number of hours in a 28 day work period after which firefighters (186 hours for law enforcement employees) were entitled to FLSA overtime pay beginning in 1978.

In *Jones v. Donovan*, 91 Labor Cas. (CCH) ¶ 34,008 (D.D.C.1981), *aff'd mem.*, 675 F.2d 1340 D.C.Cir.1982), the District Court for the District of Columbia ordered the Secretary to recompute the overtime standards by including state and local data. The Secretary's new study concluded that the number of hours over which federal firefighters and law enforcement personnel should have been entitled to overtime pay was 212 and 171 hours, respectively. 48 Fed.Reg. 40,518–19 (1983). Accordingly, the Office of Personnel Management directed that *all* federal firefighters and law enforcement personnel, including those not involved in any suit, be awarded overtime pay based upon the Secretary's new study.

Section 16(b) of FLSA, 29 U.S.C. § 216(b), provides that any employer (including any federal agency) who violates the overtime provisions of § 7, 29 U.S.C. § 207, shall be liable to affected employees in the amount of their unpaid overtime compensation and "in an additional equal amount as liquidated damages." If, however, the employer establishes that the acts giving rise to FLSA liability were undertaken in "good faith" and that it "had reasonable grounds for believing" that its actions were not a violation of FLSA, the court has discretion to award no liquidated damages or to award any amount that does not exceed the amount specified in § 16. 29 U.S.C. § 260.

In *Jones v. Donovan*, 102 Labor Cas. (CCH) ¶ 34,637 (D.D.C.1984) (*Jones II*), and in *Lanehart v. Marshall*, 26 WH Cas. 1654 (D.Md.1984), certain federal firefighters and law enforcement personnel sued the United States for liquidated damages. Both district courts found that the government had acted in good faith and on reasonable grounds when it failed to include in the Secretary's study the hours worked by state and local government personnel. Nevertheless, those courts awarded partial liquidated damages equal to the amount of interest due on the plaintiffs' unpaid overtime compensation.

The government did not appeal from either *Jones II* or *Lanehart*. As required by the court, it paid liquidated damages to the plaintiffs in those cases. The government awarded overtime pay to all employees who were entitled to it, plaintiffs and non-plaintiffs. It was not at liberty to voluntarily pay liquidated damages to employees who had been awarded overtime pay but were not plaintiffs in *Jones II* or *Lanehart*.

### District Court Proceedings
### In This Case

On April 19, 1985, plaintiffs commenced this action seeking liquidated damages under FLSA. On September 17, 1985, they served an interrogatory requesting "the name and last known home address within [the Eastern District of New York] of each federal employee employed by [the federal government] at any time from April 19, 1979 through January, 1984" who had received overtime pay because of the revised standard set by the Secretary's new study and who was not a plaintiff in either *Jones II* or *Lanehart*. The stated purpose of the

---

1. *National League of Cities* was overruled, *Garcia v. San Antonio Metropolitan Transit Authori-* ty, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), a fact of no moment on this appeal.

interrogatory was to enable "plaintiffs' counsel to send written notice to other potential plaintiffs in this action."

Anticipating the government's objection, plaintiffs moved to compel answer in respect of fourteen governmental agencies. The government objected on the grounds that: (1) FLSA does not authorize a court order requiring an employer to divulge the names of those who could be plaintiffs in an "opt-in" class action; and (2) the discovery sought was overly broad and unduly burdensome. On October 29 and November 7, 1985, a U.S. magistrate conducted an evidentiary hearing at which the government attempted to demonstrate the time and effort required to answer the interrogatory.

On November 25, 1985, the magistrate determined that the district court has the power in its discretion to compel the disclosure sought, and, having balanced the burden of production with the plaintiffs' need, ordered the government to produce the names and addresses with respect to five agencies.[2]

The district court affirmed the rulings of the magistrate and certified the question concerning its power to order the production. 28 U.S.C. § 1292(b). At the government's request, the district court stayed all proceedings. It then went on to toll the statute of limitations for those the plaintiffs would notify of their right to "opt in."

Because the jurisdiction of the district court was based on 28 U.S.C. § 1346(a)(2) (The Little Tucker Act), this court has jurisdiction of the appeal. 28 U.S.C. § 1295(a)(2).

## ISSUES

Whether the district court abused its discretion in: (1) compelling the United States to produce the requested names and ad-

dresses; and (2) tolling the statute of limitations.

## OPINION

### (1) Compelling Discovery

### (a) Power of the District Court

■ Plaintiffs brought this suit under § 16(b) of FLSA, 29 U.S.C. § 216(b). That section provides that an action for damages under FLSA may be brought (emphasis added):

> by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Unlike Fed.R.Civ.P. 23, under which a class member must "opt out" not to be bound, a "class" member under § 16(b) must "opt in" to be bound. *See Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir.1975); *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288–89 (5th Cir.1975). The Portal-To-Portal Act of 1947, Pub.L. No. 80–49, ch. 52, § 5(a), 61 Stat. 84, 87 (1947), in a section entitled "Representative Actions Banned", deleted provisions in the FLSA relating to the designation by employees of an agent or representative to maintain an action under § 16(b) for and on behalf of all employees similarly situated, *see* FLSA, ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938), and added the opt-in provision.[3]

■ Prompted by its dissatisfaction with the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), Congress enacted The Portal-To-Portal Act "to define and limit the jurisdiction of the

---

**2.** Regarding the U.S. Army, the magistrate also required a response unless the local army installations could establish undue burden. It was determined that seven agencies had no potential class members in or near the Eastern District of New York. Plaintiffs conceded that production in respect of the Department of the Treasury would be burdensome.

**3.** In addition to abolishing representative actions, The Portal-To-Portal Act provided for a nationwide statute of limitations, limited retroactive FLSA liability, and enacted the "good faith" defense to the assessment of liquidated damages. Ch. 52, §§ 6, 10, 11, 61 Stat. 87–89.

courts," ch. 52, § 1(b)(3), 61 Stat. 85. *Anderson* had expanded the scope of compensable "working time" for FLSA purposes by including time spent in walking on an employer's premises to a work station and in conducting certain preliminary and incidental activities. Congress intended that The Portal-To-Portal Act would abate several thousand lawsuits filed under FLSA to recover wages for the time workers were in transit to and from work stations. *See* H.R. Rep. 71, 80th Cong., 1st Sess. 4, *reprinted in* 1947 U.S. Code Cong. Serv. 1029, 1031.

A passage in the legislative history, upon which the government heavily relies here, reads:

> The procedure in these suits follows a general pattern. A petition is filed under section 16(b) by one or two employees in behalf of many others. To this is attached interrogatories calling upon the employer to furnish specific information regarding each employee during the entire period of employment. The furnishing of this data alone is a tremendous financial burden to the employer.

*Id.* at 4, *reprinted in* 1947 U.S. Code Cong. Serv. at 1032.

The government contends, on the basis of that legislative history, that Congress "did not intend that employers be required to assist in providing notice to every potential plaintiff in an action under the FLSA." The government argues that "it is apparent that trial courts have no authority to direct FLSA defendants to provide information to plaintiffs that may lead to huge class litigation and that may well facilitate champertous practices." The Tenth Circuit adopted that reasoning in *Dolan v. Project Construction Corp.*, 725 F.2d 1263, 1267 (10th Cir.1984), and the government urges this court to do the same.

Plaintiffs counter that, though Congress banned "representative" type class actions, it retained "collective" class actions and modified the procedure, creating a hybrid "opt-in" procedure. Plaintiffs further argue that the language of § 16(b) clearly indicates that Congress did not intend to restrict plaintiffs from notifying "other employees similarly situated."

Courts have considered the matter of compelling employers to disclose names of similarly situated employees, and the source, manner, and form of notification to employees of a possible claim under the FLSA and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA), which incorporates § 16 of FLSA, *id.* § 626(b). In *Dolan*, the court held that the district court "may not order the production of names of all possible plaintiffs for the *sole* purpose of establishing or notifying the class." 725 F.2d at 1267 (emphasis in original); *see also McKenna v. Champion International Corp.*, 747 F.2d 1211 (8th Cir.1984) (district court lacks authority to direct, and counsel not permitted to send, court-approved notice to potential class members under ADEA); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir.1977) (court approved notice not mandated by due process, thus order to produce employee's names vacated for reconsideration). *See generally* Annot., 67 A.L. R.Fed. 282 (1983).

In *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir. 1979) (per curiam), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979), the court held that the district court has the power to order notice given to potential members of the plaintiff class under § 16(b). The court stated that, "[a]lthough one might read the Act, by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case." 600 F.2d at 336; *see also Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 93 (D.N.J.1983), *appeal dismissed*, 747 F.2d 174 (3d Cir.1984). *Braunstein* has been interpreted as authorizing discovery of the names of those to be notified. *See, e.g., Palmer v. Reader's Digest Assoc., Inc.*, No. 84 Civ. 8397–CSH (S.D.N.Y. Feb. 11,

1986) [Available on WESTLAW, DCTU database].[4]

Unlike the courts in some of the foregoing cases, we do not deal here with a court-approved notice or with notice in any form. The matter before the district court and before us is simply a discovery order, and the sole questions on appeal are whether the order is within the power of the district court and whether the issuance of that order constituted an abuse of discretion.

The legislative history concerning The Portal-To-Portal amendment and its reference to banning "representative" actions, makes clear that Congress' concern did not relate to the type of action in which the present discovery order was issued. Senator Donnell, chairman of the subcommittee which conducted hearings on the amendments, explained the rationale for § 16(b):

We now proceed to the final portion of the bill, Part IV. Section 8 contains a provision entitled "Representative Actions Banned." Let me just say a word about what is meant by representative actions. It will be recalled that in section 16(b) of the Fair Labor Standards Act there is a provision reading as follows:

Action to recover such liability—

This is, the liability for unpaid minimum wages, unpaid overtime compensation, and liquidated damages—

Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

It will be observed, Mr. President, that two types of actions are permitted under this sentence in section 16(b) of the Fair Labor Standards Act of 1938: First, a suit by one or more employees, for himself and all other employees similarly situated. That I shall call for purposes of identification a collective action, a suit brought by one collectively for himself and others. The second class of actions authorized by that sentence embrace those in which an agent or a representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated.

In illustration of this latter category—which category for purposes of identification I call a representative action, as distinguished from a collective action—suppose that everyone here present this afternoon were employed by the X steel company, and we all belonged to a labor union, and gave a power of attorney to the district director of the labor union who might live 500 miles away and not be employed at all in the plant in which we were employed. He could file a suit there as representative of all of us. We would not be in that case at all except as he is our representative. It will be noted, therefore, Mr. President, that in those two classes of cases there is this difference: In the first case, an employee, a man who is working for X steel company can sue for himself and other employees. *We see no objection to that. But the second class of cases, namely, cases in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case, may result in very decidedly unwholesome champertous situations which we think should not be permitted under the law.*

So section 8 amends the Fair Labor Standards Act by eliminating that portion of section 16(b) which permits em-

---

**4.** In *Palmer,* the District Court for the Southern District of New York suggested that the Second Circuit reconsider *Braunstein* "in light of more recent and contrary authority in other circuits." The matter being procedural (discovery) and not implicating the 28 U.S.C. § 1346(a)(2) jurisprudence of this court, we apply the discernable guidance of the Second Circuit, as found in *Braunstien,* which was interpreted in *Palmer* as authorizing discovery of names of potential class members. *See Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984); *Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1022 n. 4, 228 USPQ 926, 929 n. 4 (Fed.Cir. 1986).

ployees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated.

93 Cong. Rec. 2182 (Remarks of Senator Donnell) (emphasis supplied).

In the absence of any legislative history to the contrary, we find those remarks by Senator Donnell persuasive. *See Lindahl v. Office of Personnel Management,* 470 U.S. 768, ——, 105 S.Ct. 1620, 1631, 84 L.Ed.2d 674 (1985); *accord Texas State Commission for the Blind v. United States,* 796 F.2d 400, 416, (Fed.Cir.1986) (Davis, J., concurring). We find persuasive, also, the statement of the District Court for the District of Columbia that:

> the purpose of the ban on representative actions was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of the lawsuit.[8] Such situations unfairly left employers in the dark concerning the identity of the individuals whose claims would be litigated at trial.

---

[8] The ban was also partially aimed at a fear that unions, as representatives, were concretely benefitting from participation in these suits. *See* note 7 *supra;* 93 Cong. Rec. at 2092–96.

*Arrington v. National Broadcasting Co.,* 531 F.Supp. 498, 501 (D.D.C.1982). This view is bolstered by the provision requiring named party plaintiffs to opt in by filing written consent forms with the court. Together the amendments banning representative actions and requiring individual written consents sought "to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." *Id.* at 502.

Nothing in the applicable legislative history indicates that Congress intended in all cases to forbid the district court from ordering production of names and addresses of potential class members to facilitate notifying them of a pending FLSA action. In the absence of express congressional intent concerning the discovery request in issue here, we are not persuaded by the government's argument that a district court lacks the power to grant the present discovery request.

### (b) Abuse of Discretion

■ A determination that a district court has the power to order the production in question here does not end the inquiry. Under the particular facts and circumstances of a given case, it must be determined whether an abuse of discretion occurred in exercising the court's power. *See Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986); *see also* Fed.R.Civ.P. 26(c), 37(a).

■ The statements in the House Report relating to burdensome discovery, upon which the government here relies in asserting lack of power to issue the order, concerned the production of detailed information in support of "portal-to-portal" claims. Those statements expressed Congress' concern "that employers throughout the nation would be forced to comb through payroll records of their entire work force, trying to determine whether, with newly mandated travel time included, additional overtime compensation should have been paid." *Vivone v. Acme Markets, Inc.,* 105 F.R.D. 65, 68 (E.D.Pa.1985).

The situation feared by Congress is not present in this case. The government already has the names of employees to whom it has paid overtime pay. Plaintiffs seek names and addresses of employees on that list. No detailed review of individual employee actions or records and no extensive combing through payroll records to identify potential class members will be required. The burden on the government in producing names and addresses of potential class members in the agencies covered by the present order does not rise to the level of that reflected in the cited expression of congressional concern.

Having concentrated primarily on its assertion that the district court lacks power to order employers to produce the names and addresses of employees, the government has presented no basis on which an

abuse of discretion may be found. Indeed, respecting four agencies (Department of Justice, Coast Guard, Department of the Interior, and Department of Agriculture), the government has conceded that production of the requested records would not be burdensome. The balance drawn by the magistrate and approved by the court in respect of the General Services Administration and the U.S. Army, reflects no abuse of discretion.

That portion of the order compelling production of the specified names and addresses is affirmed.

### (2) Tolling the Statute of Limitations

■ As above indicated, the district court ordered that "further proceedings in the district court shall be stayed," pending certification and appeal, and went on to say "the statute of limitations as to any claims of the employees as to whom discovery has been directed shall be tolled from the entry of this Order."

The parties have briefed and argued the tolling issue. The government says the district court was without authority to toll the statute because that action would waive the government's sovereign immunity. *See Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Plaintiffs counter that the government requested the stay and the statute should therefore be tolled under equitable principles.

The portion of the district court's order that dealt with tolling affected no right of any party to the suit. That portion merely stated what the court might do if and when it may be confronted with an untimely claim. We need not, therefore, address either party's contention.[5]

The district court's tolling order did not apply to the seven plaintiffs before the court, each of whom had unquestionably filed on time. Nor did it apply to the employees who might possibly benefit from a tolling ("employees as to whom discovery

has been directed"). Those employees have not filed claims, and it is unknown whether they ever will. Under general principles derived from the "case or controversy" requirement of Article III, Section 2, Clause 1 of the U.S. Constitution, a federal court is without power to give advisory opinions, because such opinions cannot affect the rights of the litigants in the case before it. *See, e.g., Sierra Club v. Morton*, 405 U.S. 727, 731–34, 92 S.Ct. 1361, 1364–66, 31 L.Ed.2d 636 (1972); *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Nor do courts "sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]." *Princeton University v. Schmid*, 455 U.S. 100, 102, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982). When and if the time comes, the district court will presumably apply the doctrine of equitable tolling consistently with Congress' intent in enacting the particular statutory scheme set forth in FLSA. *See, e.g., Bowen v. City of New York*, ___ U.S. ___, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986); *Block v. North Dakota*, 461 U.S. 273, 287–88, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967).

That portion of the order purporting to toll the statute of limitations must be vacated by the district court as prematurely issued.

AFFIRMED IN PART AND REMANDED.

NICHOLS, Senior Circuit Judge, dissenting.

As this is an expedited appeal, I am constrained to curtail what would otherwise be an extended discourse. Respectfully, I dissent. The government based its appeal on its interpretation of the Portal to Portal Act and I agree that it does not, by itself, support the argument based upon it.

---

5. Nothing here said would, of course, preclude the district court from considering those contentions if the question should arise of whether the statute of limitations should be tolled in respect of any future plaintiff or plaintiffs.

My difficulty goes back to the original Act of June 25, 1938, 52 Stat. 1069. From that very beginning the law made it clear that the doubled or "liquidated" damages were not an entitlement as were the first or single damages, the unpaid overtime. It did this by providing that the primary agent of enforcement, the Secretary of Labor, could only require payment of unpaid overtime. This is still perpetuated in 29 U.S.C. § 216(c) which also now recites that acceptance of unpaid overtime as directed by the Secretary waives liquidated damages. Such liquidated damages are an added reward for assuming the burden of bringing suit rather than an entitlement; if you allow the Secretary of Labor to bear your burden you don't get them. On the other hand, the Secretary's efforts benefit the entire payroll, not just the grievants, to the tune of the entitlement only.

To me, it is a distortion of the Act for the court to busy itself as an ersatz Secretary of Labor, but with respect to the liquidated damages, endeavoring to bring in the entire payroll to share in this windfall, rather than those who have sued for it only. Here, it takes some of the curse off that the nonparties to be solicited will, according to counsel's statement, not receive the whole statutory damages if the interest is less, but only an amount equal to the interest, up to the statutory maximum.