**GREGORY TIMBER RESOURCES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 87–1598.**

United States Court of Appeals, Federal Circuit.

Aug. 29, 1988.

Andrew R. Gardner, Stoel Rives Boley Jones & Grey, Portland, Or., argued for appellant. With him on the brief was Charles F. Adams.

Paul J. Ehlenbach, Commercial Litigation Branch, Dept. of Justice, Washington, D.C. argued for appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on the brief were James P. Perry, Deputy Asst. Gen. Counsel and Arno Reifenberg, Regional Counsel, Dept. of Agriculture, of counsel.

Before FRIEDMAN, BISSELL, and MAYER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Department of Agriculture Board of Contract Appeals (Board), Nos. 84–319–1 and 84–320–1, upholding an award of damages against the appellant Gregory Timber Resources, Inc. (Gregory Timber) for default on two timber contracts. *Gregory Timber Resources, Inc.*, 87–3 B.C.A. (CCH) ¶ 20,086, at 101,681 (AGBCA, August 26, 1987). The appellant challenges the award on various grounds. It also challenges the constitutionality of the provision of the Federal Courts Improvement Act of 1982 (Courts Improvement Act), 28 U.S.C. § 1491(a)(2) (1982), that substituted the United States Claims Court, an Article I court, for the United States Court of Claims, an Article III court, as the forum in which a contractor may obtain a trial *de novo* of a contracting officer's decision.

We hold that the appellant cannot maintain its constitutional attack because it elected to challenge the contracting officer's decision before the Board rather than before the Claims Court. We affirm the Board on the merits of the contract claims.

I

Pursuant to the National Forest Management Act of 1976, 16 U.S.C. § 472a (1982), the Forest Service sells timber contracts to private parties to harvest timber from government lands. At auctions in February and March 1982, Gregory Timber, as the high bidder, was awarded two contracts—Bonk # 2 and East Flat Creek III.

These timber sale contracts were resales of previous contracts, purchased but not performed, by the Robert Dollar Company. Gregory Timber purchased the physical assets of the Dollar company and agreed to indemnify the company for any losses it might incur when the government resold the contracts. Gregory Timber's bids on the contracts were high enough to eliminate any potential liability to the Robert Dollar Company, and were significantly higher than the other bidders and the Forest Service's stated minimum bids.

The contracts, which required Gregory Timber to cut, remove and pay for the timber by November 30, 1983, were awarded on April 21, 1982. Since the normal operating season for harvesting timber in that area was from June 1 through October 31, this schedule allowed Gregory Timber two operating seasons to perform the contracts. Gregory Timber submitted a plan stating that logging on the two contracts would begin September 1, 1983, during the second operating season.

Gregory Timber also had several other timber contracts with the Forest Service. In October 1981, the Forest Service awarded to it the North Area Salvage contract, which required completion by November 30, 1983. In March 1983, the appellant received the Locket # 2 contract, with completion set for December 1985.

In October 1983, approximately two months before the scheduled completion date for the Bonk # 2 and East Flat Creek III contracts, Gregory Timber, which had not begun performance, requested that the contracts be extended or adjusted. The contracting officer denied the request. When the contracts expired on November 30, 1983, Gregory Timber had cut no timber under them.

The Forest Service resold the contracts for less than Gregory Timber's contract prices. The Forest Service then assessed damages for default against Gregory Timber, measured by the difference between the contract price and the resale price.

Gregory Timber appealed the contracting officer's decision to the Board which, except for a relatively minor modification, upheld the contracting officer.

The Board rejected Gregory Timber's constitutional challenge to the Board proceedings. Gregory Timber contended that the provision in the Courts Improvement Act that substituted the Claims Court, an Article I court, for the former Court of Claims, an Article III tribunal, as the forum in which a contractor could obtain *de novo* review of a contracting officer's decision, unconstitutionally denied it the right to an adjudication of its claim by an Article III court. The Board held that because disputes between government contractors

and the government involve public rights, the resolution of such disputes may be assigned to non-Article III tribunals.

On the merits, the Board rejected Gregory Timber's contentions that it should have been given an extension of time for performance of the contracts because (1) the alleged labor dispute that Gregory Timber asserted was responsible for its failure to perform was not an event beyond its control which, under the contract, was a condition for granting an extension; and (2) its performance of other contracts prevented it from performing the Bonk # 2 and East Flat Creek III contracts. The Board also held that Gregory Timber had not met the conditions of other provisions in the contracts that would have warranted an extension. These rulings are discussed in detail in part III below.

## II

Prior to the Courts Improvement Act, a government contractor who wished to challenge a decision of a contracting officer had two options under the Contract Disputes Act of 1978, for obtaining a *de novo* determination of his claim. (1) He could appeal to a Board of Contract Appeals and then obtain judicial review of the Board's decision in the Court of Claims, or (2) he could file suit directly in the Court of Claims, which (through its Trial Division) would try the case. The Courts Improvement Act combined the Court of Customs and Patent Appeals and the appellate functions of the Court of Claims in the new Court of Appeals for the Federal Circuit. It also created a new Article I court, the United States Claims Court, to exercise the trial jurisdiction the Court of Claims previously had.

The effect of this structural change was to eliminate a contractor's earlier right to a trial *de novo* before an Article III court, the Court of Claims. Even under the prior procedure, however, a contractor who elected to appeal to a Board of Contract Appeals waived the right to a trial *de novo* before a trial judge of the Article III court.

■ Gregory Timber contends that, at least where the government is seeking re-covery from the contractor, the contractor is entitled to a *de novo* determination of that claim by an Article III court, and that the present statutory system, under which a contractor cannot obtain such Article III review, is unconstitutional. We do not reach that question, however, because we conclude that Gregory Timber cannot raise it in the posture of this case.

When the contracting officer assessed damages against Gregory Timber for its breach of the two contracts, Gregory Timber had the option of challenging that ruling before either the Board or the Claims Court. It elected to proceed before the Board. The effect of this election was to waive, and thus eliminate its right to, a trial *de novo* before the Claims Court. It now argues that the procedure it elected to follow is unconstitutional because, if it had followed the alternative procedure, that procedure would not have provided it with the trial by an Article III court to which it asserts it would have been entitled.

If Gregory Timber wanted to challenge the constitutionality of the adjudication of government contract cases by the Article I Claims Court, the proper procedure for it to have followed was to file suit in that court. According to Gregory Timber's brief, there are 22 cases pending in the Claims Court that raised that issue. (The Claims Court recently rejected the constitutional challenge, and this court authorized an interlocutory appeal of the question. *Seaboard Lumber Co. v. United States*, Misc. No. 203 (Fed.Cir. June 23, 1988) (unpublished order)). Indeed, if Gregory Timber had followed that course and the Claims Court had held for it on the merits, there would have been no occasion for us to decide the constitutional question that Gregory Timber pursues. "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (citations omitted) (Brandeis, J., concurring).

The procedure that Gregory Timber chose to follow—appeal to the Board of

Contract Appeals with appellate review of the Board's decision by an Article III court —is the same procedure that existed prior to the Courts Improvement Act. Thus, even before the Article I Claims Court was created in 1982, the procedure Gregory Timber selected would not have given it a trial by an Article III court. By invoking that procedure in this case, Gregory Timber has waived any claim that the alternative procedure it elected not to pursue would have been unconstitutional.

Gregory Timber could have fully litigated the constitutional issue by initially seeking review and raising the issue in the Claims Court and, if that court rejected the constitutional claim and also held against Gregory Timber on the merits, by appealing the Claims Court decision to this court. The alleged constitutional flaw in the review system that Gregory Timber challenges is in the Article I character of the Claims Court. It does not affect the validity of the Board proceedings, which the creation of the Claims Court did not change. For us here to determine the constitutionality of Claims Court proceedings in government contract cases would be to render an advisory opinion, which we cannot do. *United States v. Cook*, 795 F.2d 987, 994 (Fed.Cir.1986) (and cases cited).

### III

Gregory Timber contends that it should either have been excused from performance of the Bonk # 2 and East Flat Creek III contracts or should have been given an extension of time for performance. It further contends that in denying an extension, the contracting officer committed reversible error because he failed to exercise the discretion he was required to exercise.

A. Gregory Timber argues that because it performed additional work on other Forest Service logging contracts, it should have been excused from timely performing the two contracts involved in this case.

■ One of those other contracts, the North Area Salvage contract, was scheduled to be completed at the same time as the Bonk # 2 and East Flat Creek III contracts. During the winter of 1982–83, the Forest Service discovered that a substantial amount of timber had blown down in the North Area Salvage. The Forest Service categorized the event as catastrophic, which entitled Gregory Timber to either a modification or termination of that contract. In June 1983, the Forest Service extended that contract for one year, until November 1984, and Gregory Timber agreed to remove the excess timber.

The other contract, Locket # 2, involved timber that had been damaged by fire. According to Gregory Timber, the removal of that timber took precedence over the performance of the two contracts here at issue.

The Board correctly rejected the contention that the conditions relating to those two other contracts justified Gregory Timber's failure to perform the Bonk # 2 and East Flat Creek III contracts. Gregory Timber could have refused to harvest the extra timber on the North Area Salvage contract. Since Gregory Timber was entitled to a modification of that contract, it could have sought additional time for performing the two contracts here involved as a condition of logging the North Area Salvage contract. It did not. The record shows that Gregory Timber did not remove any timber from the North Area Salvage from September through November 1983— the time during which it had planned to perform the present contracts.

The record also shows that Gregory Timber logged the Locket # 2 contract in 1984 and 1985. That action was inconsistent with Gregory Timber's present claim that logging of the Locket # 2 contract took priority because the timber in that area had been damaged by fire. The fact that Gregory Timber did not harvest Locket # 2 until 1984 and 1985 shows that the performance of that contract did not prevent it from timely performing the Bonk # 2 and East Flat Creek III contracts by November 30, 1983.

The Board found that the underlying cause for Gregory Timber's failure to perform the latter contracts was Gregory Timber's economic decision to avoid the higher

price of the timber under those contracts. As noted, Gregory Timber obtained those contracts with high bids. It chose to log the less expensive timber first. As the Board stated:

> The record indicates that Appellant processed considerable [sic] more timber than anticipated during the time frame of the present sales and the evidence suggest [sic] that the present sales did not contribute to the extra volume processed because Appellant would have had to pay higher prices for such timber than from other sales entered into by Appellant.

*Gregory Timber Resources, Inc.*, 87–3 B.C.A. ¶ 20,086, at 101,690.

B. Gregory Timber contends that it should have been given an extension of time pursuant to clause B8.21 of the contract, which provided for "term adjustment" if

> (a) Purchaser experiences delay in starting scheduled operations or interruption in active operations either of which stops removal of Included Timber from Sale Area ... for 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.
>
> (b) Causes described in (a) substantially affect the disposition or processing of Included Timber during Normal Operating Seasons through their effects on primary timber processing facilities, with a resulting delay of 60 calendar days or more in use of such facilities. In such event, Contract Term Adjustment shall not extend for more than 12 consecutive months.

*Gregory Timber*, 87–3 B.C.A. at 101,686. The contract also included clause B8.23 allowing "term extensions" which could be granted outside of the authority of clause B8.21. The Forest Service was not obligated to grant term extensions under clause B8.23.

■ Gregory Timber argues that it was involved in a "labor dispute" that warranted an extension. The alleged labor dispute, however, was wholly of Gregory Timber's own choice. Gregory Timber was attempting to reduce its labor costs at a particular mill. When the union rejected a proposed wage cut, Gregory Timber closed that mill from March 5, 1982 to approximately June 1, 1982.

In properly rejecting this contention, the Board stated:

> Under Clause B8.21 Appellant is entitled to an adjustment in the contract term equal to the actual time lost during the normal operating season.... Here, there were no scheduled operations or active operations. There is no demonstrated delay of 10 or more consecutive days. The delay, if any, occurred during the March 5th through May time frame and not during the normal operating season which began June 1.
>
> Most significantly under the terms of B8.21(a), the cause of delay, such as the labor dispute, must be beyond Appellant's control. Here, the labor dispute was not beyond Appellant's control. Indeed, Appellant requested the wage concessions from the workers and when agreement could not be reached regarding such wage concessions, Appellant shut down the plant.

*Id.* at 101,689.

Moreover, since Gregory Timber did not plan to begin work on the two contracts here involved until September 1, 1983, the fact that its mill was closed for three months more than a year earlier, cannot justify its subsequent nonperformance.

C. The contracting officer's letter denying an extension read as follows:

> You requested contract term adjustment under B8.21(b) [labor dispute].... Labor negotiations to obtain wage concessions do not constitute a labor dispute under B8.21(b), since your plants were apparently closed due to market conditions rather than a strike by your employees.
>
> Also, you requested early extension or contract term adjustment for operating distressed timber in more urgent need of harvesting. [North Area Salvage and Locket # 2.]

Such a request may be honored only when the Forest Service intent to grant extensions or adjustments on other contracts is spelled out in the prospectus for the timber in need of urgent harvesting. This was not the case on either of the two sales mentioned in your letter.

Finally, this sale does not qualify for any waiver of the diligent performance requirements for contract term extension; all of which apply to sales sold prior to January 1, 1982.

For the foregoing reasons, I have no authority to adjust or extend the November 30, 1983, termination date of this timber sale contract.

Seizing upon the contracting officer's conclusory statement that he had "no authority" to extend the termination date of the contract, Gregory Timber asserts that those words show that the contracting officer failed to exercise his discretion in deciding not to grant an extension. According to Gregory Timber, that ruling was legally erroneous because the contracting officer had authority to grant an extension, but failed to exercise discretion in deciding whether to do so. It asserts that the consequence of this error was that Gregory Timber's nonperformance should have been excused or the government's alleged termination of the contracts for breach should be converted into termination for the convenience of the government.

The latter point requires little discussion. The government did not terminate these contracts. The contracts expired by their own terms because the contractor did not perform them at all. Since the government did not terminate, there is no basis for converting a "termination" for breach into one for the convenience of the government.

■ Contrary to Gregory Timber's contention, we do not read the contracting officer's statement that he had "no authority" to extend the termination date of the contract as reflecting any failure to exercise discretion. He made that statement after explaining why the grounds upon which Gregory Timber sought an extension were unavailable to it. His conclusion that he had "no authority" to grant an exten-

sion merely stated his opinion that, considering all the circumstances, Gregory Timber had not justified the relief it sought.

We do not read the words "no authority" as indicating that the contracting officer was ruling that he was legally precluded from granting an extension. Reading his letter as a whole, it reflected his conclusion that no basis had been shown for an extension, since Gregory Timber had not satisfied any of the contractual conditions for an extension. Far from reflecting a belief that he lacked authority to grant an extension, we think the entire letter indicates that the contracting officer properly exercised his discretion in denying an extension. Whatever may be the scope of a contracting officer's discretion to grant an extension, that discretion must be exercised in accordance with and be guided by the contractual, regulatory and statutory standards governing extensions. Gregory Timber has not shown that the contracting officer departed from any of those standards.

The Court of Claims decisions upon which Gregory Timber relies are distinguishable. Those cases involved situations where the government terminated the contract after partial performance by the contractor. *See Schlesinger v. United States,* 390 F.2d 702, 182 Ct.Cl. 571 (1968) (only where contractor not in default is there breach by government, unless failure to perform is beyond the control of contractor and without his fault or negligence); *John A. Johnson Contracting Corp. v. United States,* 132 F.Supp. 698, 132 Ct.Cl. 645 (1955) (contracting officer's deferral of decision to his superior negates original incorrect denial of extension); *Manufacturers' Casualty Ins. Co. v. United States,* 63 F.Supp. 759, 105 Ct.Cl. 342 (1946) (erroneous calculation of liquidated damages after contracting officer took no action at all). Here, in contrast, there was no termination by the government, but total nonperformance by the contractor.

## CONCLUSION

The decision of the Board upholding the award of damages against Gregory Timber for default on its two contracts is

AFFIRMED.

BISSELL, Circuit Judge, dissenting-in-part.

I agree that Gregory Timber cannot maintain its constitutional attack because it elected to challenge the contracting officer's decision before the Board rather than before the Claims Court. I, however, would reverse the Board on the merits.

The issue before us on the merits is whether the contracting officer (CO) failed to exercise any discretion with respect to a requested extension such that the contract was either deemed terminated for the convenience of the government or ended by the government's material breach of its duty of good faith and cooperation. The Board in its opinion failed to address this issue. The majority opinion merely dismisses the issue out of hand.

Although the Board made no specific finding on whether it would have been an abuse of discretion for the CO to have granted an extension, it appears to have concluded that it would have been within the CO's authority to extend.* The government in its brief does not deny that the CO had authority to extend. The government only argues that the extensions were not *compelled.* It follows that the CO had the discretion to grant or deny the extensions, and was not compelled by law to either grant or deny the requested extensions.

The central issue, accordingly, is whether the CO fairly and reasonably exercised available discretion in denying Gregory Timber's extension requests and in terminating the contracts for default. Contrary to the majority's position, the CO's failure to exercise *any discretion* was established by the undisputed facts before the Board. Significantly, the government did not argue before this court and the Board did not find that the CO *did* exercise any legitimate or reasoned discretion in denying Gregory Timber's extension requests. Only the majority so holds. In my view, the CO committed legal error in failing to recognize his discretionary authority and the Board committed legal error in failing to address and resolve the legal consequences of the CO's conduct.

Additionally, the Board concluded, and the government in its brief asserts, that Gregory Timber has not proved it was entitled to an extension as a matter of right. The majority opinion also holds that "Gregory Timber has not shown that the contracting officer departed from" the contractual, regulatory and statutory standards governing extensions. At 846. The burden, however, is not on Gregory Timber, but is on the government to prove that the CO acted correctly in refusing the requests for the extensions. *Lisbon Contractors, Inc. v. United States,* 828 F.2d 759, 763–65 (Fed.Cir.1987) (government bears burden of proof on issue of the correctness of its actions when pursuing damages based upon a defaulted contract). Gregory has not claimed, and need not show for purposes of this appeal, absolute entitlement to an extension. What Gregory Timber has claimed and what the law guarantees is absolute entitlement to an exercise of informed discretion by the CO. "While a contractor is not entitled to have a termination waived, he is entitled to have the contracting officer *consider* the alternatives to termination." *Mid–South Contractors, Inc.,* 85–3 ¶ 18, 210, at 91,399 (emphasis in original).

I read the record as demonstrating that the CO gave absolutely no consideration to his authority to extend. Gregory Timber raised this issue before the Board and the Board should have addressed it. The Board did not. When a request is made for an extension that could have been granted, the CO incorrectly believed that he lacked authority to grant an extension, and the grant of an extension would have avoided a subsequent default, the contract must be treated as having been terminated for the convenience of the government. *Schlesinger v. United States,* 390 F.2d 702, 707–10, 182 Ct.Cl. 571 (1968); *John A. Johnson*

---

* The Board stated: "[W]hile the parties could have agreed to extend the present contracts because of a more urgent need to log other timber, the parties did not agree and we, therefore, conclude that such logging does not provide a legal justification to extend the present sales." 87–3 BCA, at 101, 690.

*Contr. Corp. v. United States*, 132 F.Supp. 698, 705–06, 132 Ct.Cl. 645 (1955); *Mid–South*, 85–3 BCA at 91,399.