Royal V. McKENNA, Appellee,

v.

CHAMPION INTERNATIONAL
CORPORATION, Appellant.

and

Royal V. McKENNA, Melvin J. Wiersum,
Kenneth M. Mercer, Craig Williams,
Alfred Edward Moorer, Jr., Charles
O'Connell and Wallace Elfstrom, Ap-
pellees,

v.

CHAMPION INTERNATIONAL
CORPORATION, Appellant.

No. 83–2402.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1984.

Decided Nov. 6, 1984.

McMillian, Circuit Judge, concurred and filed opinion.

John M. Mason, Minneapolis, Minn., for appellant.

Neil P. Convery, St. Paul, Minn., for appellee.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The issue before us in this age-discrimination class action is whether the district court properly ordered that prospective class members be notified of their right to join in the action. Because the Fair Labor Standards Act, 29 U.S.C. § 216(b) (1982), which governs such class actions, differs substantially from Fed.R.Civ.P. 23, we reverse.

In 1977, Hoerner Waldorf Corp. merged into Champion International Corp. Royal

McKenna, a former Hoerner Vice-President, brought suit in October, 1980, against Champion, alleging that he was discharged because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982). McKenna asserts that he learned during discovery that Champion had decided to "prune the old wood" from the company, resulting in the actual or constructive termination of between thirty and three hundred Hoerner senior management employees. On February 23, 1983, he moved for leave to file a class action complaint under section 216(b) and requested that the district court send notice of the action to prospective class members of Hoerner Waldorf. An amended complaint was filed adding five other employees: Melvin J. Wiersum, Executive Vice President; Charles O'Connell, General Counsel and Corporate Secretary; Kenneth Mercer, General Plant Manager, North Kansas City; Wallace Elfstrom, Packaging Specialist Craig Williams, National Account Salesman East Coast; and Alfred E. Moorer, Jr., Sales Manager, Richmond, Virginia. The district court granted the request and directed Champion to furnish at its own expense the names and addresses of all persons falling within the class definition. The court held a hearing to determine the form and contents of the proposed notice, which was to be directed to all Hoerner employees who were over forty years of age as of 1977 or are currently over forty years of age.

The district court certified that the order directing notice involved a controlling question of law immediately reviewable under 28 U.S.C. § 1292(b) (1982), and we permitted the appeal. See Schmidt v. Fuller Brush Co., 527 F.2d 532, 537 n. 5 (8th Cir.1975). Champion contends that the district court erred in allowing McKenna to amend his complaint to add class-action claims. We conclude that permitting the amendment was not an abuse of discretion. Champion also argues that neither the district court nor plaintiffs' counsel has authority under section 216(b) to notify putative class members of the pending suit.

I.

In providing for enforcement of the ADEA, 29 U.S.C. § 626(b) (1982) specifically incorporates section 16 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216 (1982). Section 216(b) provides:

An action to recover * * * liability * * * may be maintained against any employer * * * by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

A split has developed among other circuits as to the proper role of district courts in notifying potential class members in section 216(b) proceedings. The Second Circuit has held that district courts have the power to authorize notice. Braunstein v. Eastern Photographic Laboratories, 600 F.2d 335, 336 (2d Cir.1978) (per curiam), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979). The Ninth Circuit has ruled that the district courts have no authority under section 216(b) to direct or permit potential claimants to be notified of the pending suit. Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 864 (9th Cir.1977); see Partlow v. Jewish Orphans' Home, 645 F.2d 757, 759 (9th Cir.1981). The Seventh Circuit has determined that district courts lack authority to send out notice containing indicia that might be misinterpreted as judicial endorsement of the claim, such as court letterhead or official signatures. Woods v. New York Life Insurance Co., 686 F.2d 578 (7th Cir.1982). At the same time, the court held that plaintiffs and their counsel did have a right to notify others and that district courts could "place appropriate conditions on the exercise of that right." Id. at 580. The Tenth Circuit also has ruled that district courts lack the authority to send or direct notice, Dolan v. Project Construction Corp., 725 F.2d 1263, 1268 (10th Cir.1984), and agreed with the Seventh Circuit that plaintiff's counsel

possesses a right of reasonable communication with potential class members.[1]

A comparison of Rule 23 and section 216(b) illustrates why the district court should not be responsible for sending notice in this case. In contrast to section 216(b), the district court in a class action brought under Fed.R.Civ.P. 23 is authorized to "direct to the members of the class the best notice practicable under all circumstances, including individual notice to all members who can be identified through reasonable effort." We have said that there is a "fundamental, irreconcilable difference" in the effect of the two procedures:

> In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.

*Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir.1975) (emphasis omitted) (quoting *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288–89 (5th Cir.1975)). Due process considerations require that the district court notify potential Rule 23 class members, thus enabling them to opt out and avoid any res judicata effect of a final judgment. No such protections are necessary in section 216(b) proceedings, where parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date. In view of this difference between the "opt in, opt out" nature of Rule 23 and section 216(b), it can be concluded that "the § 216(b) ac-

tion tends to discourage collective litigation by virtue of the requirement of an affirmative act by each plaintiff." *Dolan*, 725 F.2d at 1267.

In addition, section 216(b) does not contain the rigorous conditions that precede certification of "true" class actions. *See, e.g.,* Fed.R.Civ.P. 23(a), (b). Plaintiffs should not enjoy the benefits of court-directed notice without carrying the burdens of class certification. *Cf.* Fed.R.Civ.P. 23 advisory committee note to 1966 amendment (Rule 23 was not intended to affect section 16(b) actions).

The Ninth Circuit in *Kinney* carefully considered the scope of section 216(b) and we find its reasoning persuasive. The Tenth and Seventh Circuits, in *Dolan* and *Woods*, also have given careful consideration to the issue. We find Judge Posner's language in *Woods* to be particularly cogent:

> But there is a serious question whether a federal judge has the power to issue invitations to join a lawsuit. That activity changes the character of the judge from that of an adjudicator of disputes brought to him to that of a kind of town crier, ringing the tocsin to awaken those who may be sleeping on their rights; and we should require more than the generalities of Rule 83 or of the All-Writs Act, 28 U.S.C. § 1651, to conclude that a federal judge, whose authority is confined by Article III of the Constitution to the exercise of the *judicial* power of the United States, may communicate with nonparties in this way.

686 F.2d at 581–82 (citations omitted).

The contrary, per curiam opinion of the Second Circuit in *Braunstein* addressed this issue in conclusory fashion and relied on several unpublished district court opinions. It based its holding on a liberal construction of the FLSA's broad remedial

---

1. Nevertheless, the role ascribed to the district court by the Tenth Circuit in regulating communication is more restricted than that permitted by the Seventh Circuit. The Seventh Circuit held in *Woods* that the district court possesses authority under section 216(b) to order a defendant to provide the plaintiff with the names

and addresses of potential class members. 686 F.2d at 580. The Tenth Circuit in *Dolan* ruled that the district court "may not order the production of names of all possible plaintiffs for the *sole* purpose of establishing or notifying the class." 725 F.2d at 1267 (footnote omitted).

purpose and its desire to avoid a multiplicity of suits. We do not believe that these general considerations are persuasive in light of the carefully reasoned and articulated opinions in *Kinney, Dolan,* and *Woods.*

Legislative history sheds little light on the issue.[2] Section 216(b) was substantially amended by section 5 of the Portal-to-Portal Act, Pub.L. No. 49–52, 61 Stat. 87, *reprinted in* 1947 U.S.Code Cong. & Ad. News 81. The Fair Labor Standards Act of 1938 had allowed employees to designate an agent or representative to maintain actions against employers. The Portal Act deleted this provision and added a sentence providing that no employee could be made a party plaintiff unless he filed a written consent with the court. Congress passed the Portal Act to overturn the effect of *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), in which the Supreme Court held that certain preliminary and incidental activities not previously considered part of a compensable workday were subject to FLSA's minimum-wage and overtime provisions.

The Tenth Circuit in *Dolan* interpreted the legislative history as indicating that Congress intended to restrict not only *Anderson*-type suits, but also to limit generally the availability of *all* FLSA class actions. 725 F.2d at 1267. The court refused to read into section 216(b) authority for the district court to notify potential class members because such an interpretation would expand the availability of FLSA class actions. *Id.* The Seventh Circuit in *Woods* has viewed this history more restrictively, finding that it speaks only to the effect of *Anderson* and the thousands of lawsuits that it spawned. 686 F.2d at 581.

While it is evident that the 1947 amendments were aimed at the outbreak of litigation following *Anderson,* we cannot conclude from the legislative history that the amendments were to have any effect other than to limit the availability of all FLSA class actions, as was concluded in *Dolan.* We also observe that the opt-in amendment was added at a time when Rule 23 made no provisions as to opting in or opting out, but was so worded that in "pure" class actions all members would be bound. After concluding that the amendment was for the purpose of remedying a specific complaint, but also had a generalized effect of limiting the availability of all FLSA actions, we still are faced with the fact that the legislative history is totally silent on the issue of notice in section 216(b) proceedings.

■ In light of the foregoing, we cannot justify reading into the statute power that is neither legislatively granted nor constitutionally required. We hold, therefore, that a district court lacks the authority to direct notice to potential class members in suits brought under 29 U.S.C. § 626(b).

## II.

■ The issue remains whether plaintiffs' counsel may contact prospective class members. The record contains a notice form approved by the district court.[3] We feel that counsel should not be permitted to send a notice to potential class members in an age discrimination action under section 216(b), which would, of course, forbid them from sending the particular notice approved by the district court in this case.

■ A notice prepared and sent by an attorney to prospective class members serves primarily to procure remunerative employment. Accordingly, we analyze the attorney's right to send the notice as commercial speech. A four-part test is applied: first, is the communication misleading or does it concern unlawful activity; second, is there a substantial interest in prohibiting the speech; third, does prohibition directly advance these interests; and fourth, is the

---

**2.** The legislative history accompanying the ADEA does not discuss whether class actions should be restricted. *See* H.R.Rep. No. 805, 90th Cong., 1st Sess. 8, *reprinted in* 1967 U.S. Code Cong. & Ad.News 2213, 2222. Thus, we must look to the history of section 216(b).

**3.** A similar form is reprinted in *Johnson v. American Airlines,* 531 F.Supp. 957, 966–67 (N.D.Tex.1982).

regulation no broader than necessary to further the asserted interests. *See In re R.M.J.*, 455 U.S. 191, 199, 102 S.Ct. 929, 935, 71 L.Ed.2d 64 (1982); *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Bates v. State Bar*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977).

We will assume, without deciding, that the notice is not misleading. Thus, the first question is whether there is any government interest in prohibiting plaintiff's attorney from sending this notice. The federal judiciary has an important responsibility to regulate the practice of attorneys who appear before its several courts. *See* 28 U.S.C. §§ 1654, 2071 (1982); Fed.R.App.P. 46; 8th Cir.R. 22. In exercising its inherent power to oversee attorneys, the District Court for the District of Minnesota has adopted the Model Code of Professional Responsibility. D.Minn.R. 1(C); *see United States v. Agosto*, 675 F.2d 965, 969 n. 2 (8th Cir.1982). These rules provide that a "lawyer shall not * * * recommend employment as a private practitioner of himself * * * to a lay person who has not sought his advice regarding employment of a lawyer." Model Code of Professional Responsibility DR 2–103(A) (1979). The notice approved by the district court fairly falls within this prohibition.[4]

DR 2–103 embodies at least four substantial concerns: maintaining high standards within the legal profession; preventing exertion of undue influence upon lay persons; protecting the privacy of the general public; and discouraging situations in which a lawyer's judgment may be clouded by pecuniary interest. *See Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 464–65, 98 S.Ct. 1912, 1922–1923, 56 L.Ed.2d 444 (1978).

Prohibiting plaintiffs' counsel from sending notice to prospective class members directly advances these interests. It is sufficient to show a "potential danger" that this conduct will result in adverse consequences. *See In re Primus*, 436 U.S. 412, 434, 98 S.Ct. 1893, 1906, 56 L.Ed.2d 417 (1978). "The Rules prohibiting solicitation are prophylactic measures[,] whose objective is the prevention of harm before it occurs." *Ohralik*, 436 U.S. at 464, 98 S.Ct. at 1922.

The interests ordinarily advanced by DR 2–103 become even more important in a class-action context. As the number of clients and prospective class-members grows, the opportunities for and incentives to overreach and disregard potential conflicts of interest multiply. The greater the lawyer's efforts to solicit class members, the more likely that conflicts will develop. *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1581 n. 16 (1976); *see* Model Code of Professional Responsibility Canon 5 (1979). As recently recognized by the Supreme Court, "traditional concerns about 'stirring up' litigation remain relevant in the class-action context." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 n. 11, 101 S.Ct. 2193, 2199, n. 11, 68 L.Ed.2d 693 (1981). Of special concern are the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry[,] as well as the increased opportunities of * * * counsel to 'drum up' participation in the proceedings." *Id.* at 100 n. 12, 101 S.Ct. at 2200 n. 12 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782, 790 (E.D.La.1977), *appeal dismissed*, 579 F.2d 642 (5th Cir.1978)).[5] The case before us is particularly susceptible to conflicts. Besides the ADEA class claims, the complaint contains many individual allegations,

---

**4.** We recognize that a different result might be reached under Minnesota disciplinary rules, which exempt "written communications" from prohibitions relating to recommendation of employment. 52 Minn.Stat.Ann. DR 2–103 (West Supp.1984); *see also In re Appert*, 315 N.W.2d 204 (Minn.1981) (disciplinary rule prohibiting direct-mail solicitation ruled unconstitutional as applied to attorney who had mailed 250 bro-

chures soliciting tort cases). These standards are not controlling here. Although the right to practice before the federal courts is often derivative of state bar membership, the federal judiciary retains independent control over the practice of attorneys before it. *Galahad v. Weinshienk*, 555 F.Supp. 1201, 1211–13 (D.Colo.1983).

**5.** In *Bernard*, the Court held that it is inconsistent with Fed.R.Civ.P. 23 for a district court to

including bad faith, malice, retaliation, misrepresentation, and punitive damage counts based on willful indifference to the ADEA and employees' rights. These additional claims do not touch all ADEA class members, and their pursuit conflicts with class-wide interests.

It is not sufficient, however, for a restriction on commercial speech simply to advance important governmental interests. The regulation must be no broader than necessary to further the interests. *In re R.M.J.*, 455 U.S. at 203–04, 102 S.Ct. at 937–938. Comparing *Ohralik* and *Primus* illustrates why the restriction we impose has an appropriate fit. In *Ohralik*, the Court upheld the disciplining of an attorney for egregious in-person solicitation of personal-injury claims. 436 U.S. at 461–62, 98 S.Ct. at 1921–1922. Because the attorney's activity was motivated primarily by pecuniary gain and furthered no political or associational purposes, the conduct was only "marginally affected" with first amendment concern. *Id.* at 459, 98 S.Ct. at 1920. After *Ohralik*, it is permissible to proscribe in-person solicitation for gain in circumstances likely to produce fraud, overreaching, or other unethical conduct. *Id.* at 465–66, 98 S.Ct. at 1918–1923.

*In re Primus*, by contrast, involved an ACLU attorney who was permitted to communicate in writing with a woman concerning the violation of her constitutional rights. Legal services were performed at

no charge by an organization that engaged in litigation as a form of political expression and association. The Court held that the state could not discipline the attorney absent a showing of actual harm to the client. 436 U.S. at 435, 98 S.Ct. at 1906.

The communication in the instant case falls closer to *Ohralik* than to *Primus*. There is no indication of an intent to further the political or associational freedoms of either the attorney or the plaintiff class member. Rather, the action would be undertaken by a "non-public attorney whose interest in solicitation centers on the aggrandizement of fees." *Ohio v. Richter Concrete Corp.*, 69 F.R.D. 604, 607 (S.D. Ohio 1975).[6]

Equally important, direct-mail solicitation of particular plaintiffs for a particular lawsuit closely approaches in-person solicitation. *See Baker v. Michie Co.*, 93 F.R.D. 494, 496 (W.D.Va.1982). These communications from counsel "are not subject to third-party scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading." Model Rules of Professional Conduct Rule 7.3 comment (1982).[7] The notice contemplated in this case is sufficiently close to in-person solicitation to justify its prohibition. *See Allison v. Louisiana State Bar Association*, 362 So.2d 489, 496 (La.1978); *In re Rule of Court*, 564 S.W.2d 638, 644 (Tenn.1978).

substantially restrict communications between parties to a class action and potential class members absent specific factual and legal findings. 452 U.S. at 103–04, 101 S.Ct. at 2201–2202. *Bernard* does not control here. First, class members under Rule 23 possess certain due process rights that do not affect section 216(b) plaintiffs. *See* part I *supra*. Second, the *Bernard* Court was not faced with solicitation dangers. The class was represented by the NAACP Legal Defense and Education Fund, a nonprofit organization formed to litigate civil-rights cases. 452 U.S. at 100 n. 11, 101 S.Ct. at 2200 n. 11; *see* note 6 *infra*. The case before us, in contrast, involves a private attorney who is requesting a court-awarded fee.

6. In *Primus* and its predecessor, *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the holdings were based on more than the clients' assertion of constitutional claims.

Both cases involved the independent political and associational goals of nonprofit public litigation organizations.

These concerns are present only in reduced form in the present case. Plaintiffs' age-discrimination claims are not grounded in any suspect classification or abridgment of a fundamental right. *See Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 (1982) (classifications based on age do not trigger strict scrutiny). Plaintiffs' counsel's only constitutional interests involve commercial speech, an area afforded minimum protection.

7. The targeted nature of specialized notice to prospective class-members is distinct from the "general mailings" approved in *R.M.J.*, 455 U.S. at 206, 102 S.Ct. at 939. *R.M.J.* is reasonably limited to mass mailings, which resemble advertising, rather than highly-targeted mailings, which approach solicitation. *See Florida Bar v.*

An invitation from counsel to particular plaintiffs to join a particular lawsuit is potentially a champertous communication. These circumstances indicate that the conduct "cannot be effectively regulated by means less drastic than outright prohibition." Model Rules of Professional Conduct Rule 7.3 comment (1982).

The most compelling argument made in *Woods*, 686 F.2d at 580-85, and in *Dolan*, 725 F.2d at 1268, is that creation of a class action must carry some right to notify potential class members. In ADEA actions, we may assume that potential class members have constructive knowledge of their rights.[8] Employers are required by the EEOC to post a notice in a conspicuous place on the premises. *See* 29 U.S.C. § 627 (1982); 29 C.F.R. § 1627.10 (1983). The notice advises individuals of the right to file suits charging unlawful age discrimination.

These considerations compel caution in setting aside the strong ethical and policy discussions against solicitation. We conclude, therefore, that plaintiff's counsel should not be permitted to communicate with or send notices to prospective class members in section 216(b) proceedings for the purpose of encouraging them to join pending or proposed lawsuits. Accordingly, counsel should not be permitted to send the notice at issue in this case.

## III.

The district court ordered Champion to produce the names and addresses of all persons meeting the class definition. Such an order is inconsistent with limited role given district courts in ADEA class actions. *Kinney*, 564 F.2d at 864; *see Dolan*, 725 F.2d at 1267.

We reverse and remand for proceedings consistent with this opinion.

McMILLIAN, Circuit Judge, concurring.

I concur in the court's holding that plaintiff's counsel should not be permitted to

mail the notice approved by the district court to persons similarly situated to the plaintiff. I write separately to set forth my understanding of the scope of this holding. The court's holding is specifically directed to plaintiff's *counsel*, and the analysis focuses upon the danger that counsel's sending notice to potential class members would constitute improper solicitation. However, I do not read the court's opinion to prohibit the *plaintiff* in a § 216(b) action from communicating with other potential members of the class. *Compare Woods v. New York Life Insurance Co.*, 686 F.2d 578, 580 (7th Cir.1982) (plaintiff may communicate), *with Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 861-64 (9th Cir.1977) (neither plaintiffs themselves nor counsel may communicate). For this reason, I would permit the district court to resolve disputes about the content of the notice, if any, and, in an appropriate case, to direct the defendant to provide the plaintiff with the names and addresses of potential class members.

---

*Schreiber*, 420 So.2d 599, 600 (Fla.1982) (McDonald, J., dissenting); Note, *Direct-Mail Solicitation by Attorneys;* Bates *to* R.M.J., 33 Syracuse L.Rev. 1041, 1064 n. 172 (1982).

8. Speech values may be given less weight when alternative means of communication exist. *See Pell v. Procunier*, 417 U.S. 817, 823–28, 94 S.Ct. 2800, 2804–2807, 41 L.Ed.2d 495 (1974).