862 F.2d 439
 48 Fair Empl.Prac.Cas. 1010,
48 Empl. Prac. Dec. P 38,460
Richard SPERLING, Frederick Hemsley and Joseph Zelauskas,
individually and on behalf of all other persons
similarly situated
v.
HOFFMAN-LA ROCHE INC., a New Jersey corporation, Appellant.
 Nos. 88-5104, 88-5214.
 United States Court of Appeals,
Third Circuit.
 Argued July 13, 1988.
Decided Nov. 30, 1988.
Rehearing Denied in No. 88-5104 Jan. 9, 1989.
 
 John A. Ridley (argued), Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J.; Harold F. Boardman, Associate Gen. Counsel, Hoffmann-La Roche Inc., of counsel, Nutley, N.J., for appellant.
 Ben H. Becker, Schwartz, Tobia & Stanziale, Montclair, N.J., Leonard N. Flamm (argued), Hockert & Flamm, New York City, for appellees.
 Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, Gale Barron Black, E.E.O.E., Washington, D.C., for E.E.O.C. as amicus curiae.
 Before SLOVITER, SCIRICA and WEIS, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Introduction
 
 1
 This appeal is before us following the district court's certification pursuant to 28 U.S.C. Sec. 1292(b) of its order giving court authorization to plaintiffs in an action under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq., to send a notice to those members of the asserted class who have not yet opted in to plaintiffs' suit. The district court, Judge Harold A. Ackerman, identified the controlling question of law as to which there is substantial ground for difference of opinion as whether, in a case governed by 29 U.S.C. Sec. 216(b), "the district court possess[es] the authority to facilitate notice of the action to ... persons who have not yet filed consents to join the action." App. at 715. This court granted leave to appeal and there is no dispute as to our appellate jurisdiction over this portion of the order, which is before us in No. 88-5214.
 
 
 2
 The defendant-employer Hoffman-La Roche Inc. (Roche) also moved in the district court to vacate the approximately 400 consents to enter the suit which have already been filed, arguing that those consents were a result of plaintiffs' allegedly "inflammatory, misleading and incomplete" letter sent March 7, 1985, prior to any court authorization. Appellant's Brief in Opposition to Appellees' Motion to Dismiss at 2. The district court denied the motion and thereafter declined to certify that portion of its order under section 1292(b), expressly holding that the controlling question Roche identified as warranting immediate appellate review was not a controlling question of law which offers a substantial ground for difference of opinion.
 
 
 3
 Roche then filed a petition in this court for a writ of mandamus seeking to reverse the district court's refusal to invalidate the consents. We denied the petition. Roche has, however, filed an appeal from the court's order denying its motion to vacate. Plaintiffs have moved to dismiss that appeal, before us as No. 88-5104. We will consider our jurisdiction over that appeal following a brief summary of the facts and procedural posture of the litigation.
 
 II.
 Facts and Procedural History
 
 4
 On February 4, 1985, defendant Roche allegedly fired or demoted some 1,200 workers at its various plants, primarily at two locations in New Jersey, pursuant to a reduction in work force. At the initiative of one or more of the named plaintiffs in this action, a group of employees who had been affected by Roche's reduction in force, with the assistance of counsel, formed a group known as Roche Age Discriminatees Asking Redress (R.A.D.A.R.), which initiated this class action against Roche under the ADEA.
 
 
 5
 R.A.D.A.R. and its counsel drafted a letter to former employees whom it had identified as within the protected class informing them of the action that had been brought against Roche and inviting them to submit their consents to join the action as plaintiffs. App. at 99-102. The letter was mailed to approximately 600 people on R.A.D.A.R. stationery and signed by Richard Sperling, a named plaintiff in this action. Through R.A.D.A.R.'s letters and "informal networking," over 400 consents were received and have been filed with the court.
 
 
 6
 Plaintiffs filed a motion requesting the district court to send out notice of the suit to putative class members who had not yet filed consents to join the action. See App. at 627. The court held that it was "permissible for a court to facilitate notice of an ADEA suit to absent class members in appropriate cases, so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 402 (D.N.J.1988). The court reviewed the language of 29 U.S.C. Sec. 216(b) and its legislative history, finding "nothing in [that history] which might apply to the issue of court-facilitated notice, at least when it arises in a case other than a portal-to-portal compensation case." Id. at 402-03.
 
 
 7
 The court noted that the ADEA is a "remedial statute" and that because of that remedial purpose, court facilitation of notice would help avoid a situation where a remedy for age discrimination is afforded only those who "are already known to their 'champion.' " Id. at 403 (quoting Woods v. New York Life Ins. Co., 686 F.2d 578, 581 (7th Cir.1982)). It also believed such notice would avoid a burden on the court of "a potentially high number of separate ADEA suits." 118 F.R.D. at 403. The court further noted that the advantages of court-authorized notice in this case would be to avoid further arguments between the parties on the propriety of the content of notice that was sent out and to enable the court to set a final deadline for consents, once the court-authorized notice had been sent. Id. at 404.
 
 
 8
 The court then prepared the content of the notice that was to go out, which it appended to its opinion, id. at 415-17, and determined that this notice could then be sent out by plaintiffs or their counsel with the following statement attached: "This notice and its contents has been authorized by the federal district court, Hon. Harold A. Ackerman, Judge. The court has taken no position regarding the merits of the plaintiffs' claims or of Roche's defenses." Id. at 417.
 
 
 9
 In the same order, the district court denied Roche's motion seeking to have the consents already filed voided because of the allegedly prejudicial nature of the March 7, 1985 letter. The court held that the letter was not flawed in any way that vitiated the consents obtained through it, and that the individuals who had elected to opt in to the action had received "sufficiently full and effective disclosure, such that their decisions may be considered informed." Id. at 410.
 
 
 10
 Roche then sought certification of both the portion of the court's order that approved the notice and the portion that refused to void the consents. As noted above, the court certified the former and declined to certify the latter.
 
 III.
 
 11
 Appellate Jurisdiction Over Roche's Appeal of The District
 
 Court's Refusal To Void The Consents
 
 12
 Roche argues that the district court's order denying its motion to void the consents is a final collateral order reviewable at this time under 28 U.S.C. Sec. 1291 or, in the alternative, that we can review it along with our review of the order certified under 28 U.S.C. Sec. 1292(b) on the ground that it is part of the same "overall issue" regarding joinder in ADEA cases. Appellant's Brief at 3.
 
 A.
 Jurisdiction as a Collateral Order
 
 13
 As the Supreme Court has repeatedly explained, an order qualifying as a collateral order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action" and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted); see Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430, 105 S.Ct. 2757, 2760-61, 86 L.Ed.2d 340 (1985); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). It is apparent that the order declining to void the consents fails to satisfy the second and third requirements.
 
 
 14
 Roche seeks to meet the separate issue requirement by arguing that "this Court need not concern itself with the merits of plaintiffs' age discrimination claims in order to determine that the manner in which the claims of the 'opt-ins' have been solicited was improper and requires the invalidation of the 'consents' heretofore filed." Appellant's Brief in Opposition to Appellees' Motion to Dismiss at 9. However, elsewhere in the same brief Roche explains that one of its objections to the March 7th letter is that "the overall impact of the letter was to solicit claims of age discrimination which are not 'well grounded in fact.' " Id. at 4. A determination whether the claims made are well-grounded is the essence of the merits inquiry, and therefore we cannot agree that the validity of the consents and the appropriateness of the solicitation letter can be divorced from the merits of the underlying claims. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1116-17 (3d Cir.1986),cert. denied, --- U.S. ----, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (district court's refusal to bar publication of discovery documents which allegedly presented an unfair picture of the defendant was not a collateral order because an inquiry into whether the materials were "unfair" involved an inquiry into the merits of the case); New York v. United States Metals Refining Co., 771 F.2d 796, 800 (3d Cir.1985) (protective order temporarily prohibiting release and requiring confidentiality of discovered documents which party claimed were one-sided and prejudicially unfair not collateral final order because inquiry would "implicate the merits").
 
 
 15
 Review under the collateral order doctrine is also not available to Roche here because the court's order refusing to void the consents can be reviewed on an appeal after a final judgment in the case. In Lusardi v. Xerox Corp., 747 F.2d 174, 178 (3d Cir.1984), we stated that "[t]he form and content of a notice to a class is generally not subject to 'collateral order' review." We held that Xerox's challenge to the form and content of the notice was not appealable because it could be effectively reviewed on appeal from the final judgment; at that time the appellate court could revoke the consents and require instead the filing of individual suits after tolling the statute of limitations. Accord In re Corrugated Container Antitrust Litigation, 611 F.2d 86, 88 (5th Cir.1980); Weit v. Continental Illinois Nat'l Bank & Trust Co., 535 F.2d 1010, 1015 (7th Cir.1976).
 
 
 16
 Roche argues that the protection accorded it under Rule 11 against frivolous allegations will be irretrievably lost absent an immediate appeal because it will be required to defend against hundreds of unwarranted individual claims of age discrimination. The "swelling in the ranks of class plaintiffs" has been rejected as a basis for Cohen collateral order review. See Corrugated Container, 611 F.2d at 88. If the added cost of undergoing litigation meant that an order was unreviewable on final appeal, then almost every interlocutory order, including those such as denial of a summary judgment motion, would be immediately appealable.
 
 
 17
 The Supreme Court has not accepted Roche's limited approach to what can be effectively reviewed after final judgment. The Court has, for example, rejected the contention that an order refusing to disqualify opposing counsel would prevent meaningful review unless immediate appeal is permitted, holding instead that "the potential harm that might be caused by requiring that a party await final judgment before it may appeal ... does not 'diffe[r] in any significant way from the harm resulting from other interlocutory orders that may be erroneous....' " Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981).
 
 
 18
 Roche's position is simply not comparable to the double jeopardy or qualified immunity situations on which it relies, in large part because it is not in the category those defenses were designed to protect. The rights protected by the Double Jeopardy clause, see Abney v. United States, 431 U.S. 651, 658-62, 97 S.Ct. 2034, 2039-42, 52 L.Ed.2d 651 (1977), the Speech or Debate clause, see Helstoski v. Meanor, 442 U.S. 500, 506-08, 99 S.Ct. 2445, 2448-49, 61 L.Ed.2d 30 (1979), and absolute or qualified immunity, see Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985), are sui generis for purposes of the collateral order doctrine. They protect the defendants from the trial itself. Roche can claim no comparable privilege.
 
 
 19
 Roche's attempt to analogize this case to Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), must also fail. In Coastal Steel, we held that an order declining to enforce a contractual forum selection clause was immediately appealable under the Enelow-Ettelson doctrine and, alternatively, as a collateral order which would be barred from subsequent review as a "matter in abatement" under 28 U.S.C. Sec. 2105. The Enelow-Ettelson doctrine has now been discarded. See Gulfstream Aerospace Corp. v. Mayacamas Corp., --- U.S. ----, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).
 
 
 20
 Roche somewhat creatively argues that the order in this case declining to void the consents can, like that pretrial order in Coastal Steel, be viewed as a "matter in abatement" under 28 U.S.C. Sec. 2105. We reject the analogy because even if Roche's motion to void the consents were granted, the result would not "defeat" the plaintiffs' action. See Nascone v. Spudnuts, Inc., 735 F.2d 763, 771 (3d Cir.1984).[1] Significantly, in Coastal Steel we held that the rejection of a forum non conveniens claim was not reviewable as a collateral final order because it took into account considerations going to the merits of the case. 709 F.2d at 195.
 
 
 21
 We conclude, therefore, that we have no jurisdiction under the collateral order doctrine over that portion of the district court's order declining to void the consents of the opt-in plaintiffs.
 
 B.
 Jurisdiction under Sec. 1292(b)
 
 22
 Roche argues that even if the refusal to void the consents is not independently reviewable, we can review it as involving an issue related to the portion of the order that we will consider as part of the appeal certified under 28 U.S.C. Sec. 1292(b). The cases on which it relies do not support exercise here of that form of pendent appellate jurisdiction.
 
 
 23
 In Merican, Inc. v. Caterpillar Tractor Co., 713 F.2d 958 (3d Cir.1983), cert. denied, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984), this court held only that, in considering an order that has been certified for appeal, we can consider "all grounds which might require a reversal of the order appealed from." Id. at 962 n. 7 (emphasis added). It is true that our opinion in In re School Asbestos Litigation, 789 F.2d 996 (3d Cir.), cert. denied, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986), was more expansive. We held there that because we were reviewing under a 28 U.S.C. Sec. 1292(b) certification the question of the applicability of the Anti-Injunction Act to the mandatory class action under Rule 23(b)(1)(B), we also had jurisdiction over the Rule 23(b)(2) and (b)(3) certifications because they involved many of the same factors. Id. at 1002.
 
 
 24
 In contrast, in this case the question whether a court has the power to authorize notice in an ADEA action, which is before use in the certified appeal, is not closely related to the question whether the consents already received should be voided because the letter obtaining those consents was allegedly prejudicial or one-sided. The former is a legal issue, whereas the latter is primarily a factual question which requires an evaluation of the solicitation of consent letter sent out by plaintiffs under the circumstances of this case. See Link v. Mercedes-Benz of North Am., 550 F.2d 860 (3d Cir.), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (declining to review question certified on section 1292(b) appeal on the ground that matter was one of fact). It therefore does not lend itself to the concurrent review situation presented in In re School Asbestos. See Johnson v. Alldredge, 488 F.2d 820, 822-23 (3d Cir.1973), cert. denied, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974) (confining scope of review to controlling question of law and not factual issues presented in question certified by district court).
 
 
 25
 We are also concerned that if this court were to expand our jurisdiction to include jurisdiction under 28 U.S.C. Sec. 1292(b) over an issue which the district court already held was not appropriate for certification, we would undermine the statutory scheme of that section by undermining the discretion that Congress vested in the district court in the first instance. Nothing about the court's order refusing to void the consents warrants our taking such an exceptional step.
 
 
 26
 Because we have concluded that we have no jurisdiction over the district court's order denying Roche's motion to void the consents, we will dismiss appeal No. 88-5104 and turn to the merits of the remaining appeal.
 
 IV.
 Propriety of Court-Authorized Notice
 
 27
 This court has not yet ruled on the authority of the district court in an ADEA action to facilitate joinder of the putative class members by approving the sending of a notice to those who have not yet filed written consents to join the action. The issue, which arises under both the FLSA and the ADEA, has divided the circuits. Compare United States v. Cook, 795 F.2d 987, 993 (Fed.Cir.1986) (authorizing discovery of names and addresses of potential class members); Woods v. New York Life Ins. Co., 686 F.2d 578, 582 (7th Cir.1982) (allowing court-approved notice); Braunstein v. Eastern Photographic Labs, Inc., 600 F.2d 335 (2d Cir.1978) (per curiam), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979) (same); with McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1214 (8th Cir.1984) (disapproving court-authorized notice); Dolan v. Project Constr. Corp., 725 F.2d 1263, 1267-69 (10th Cir.1984) (same); Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 864 (9th Cir.1977) (same). In this case, the Equal Employment Opportunity Commission (EEOC) has filed an amicus brief arguing that the district court correctly concluded that it was authorized to approve issuance of notice of the action to potentially similarly situated ADEA claimants.
 
 
 28
 Section 7(b) of the ADEA, 29 U.S.C. Sec. 626(b) (1982), adopts and incorporates the enforcement provisions of the Fair Labor Standards Act (FLSA). Among the FLSA procedures incorporated into the ADEA is that which permits bringing a collective action. Under section 16(b) of the FLSA, codified at 29 U.S.C. Sec. 216(b) (1982) (referred to hereafter as section 216(b) for convenience), "[a]n action ... may be maintained [under the FLSA] ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." (Emphasis added). Unlike Rule 23 class actions, the FLSA collective action requires the class members to signify their consent, commonly referred to as an "opt-in" provision. This is effected by the portion of Sec. 216(b) which provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. Sec. 216(b). Thus, the twin requirements for a class action to proceed under the ADEA are that the employees in the class must be "similarly situated" and that each class member must file an individual consent.
 
 
 29
 Roche argues that because Congress amended the FLSA in 1947 by deleting the language authorizing an action by a "designate[d] ... agent ... or representative," Congress chose to curb the availability of class actions in FLSA cases under Sec. 216(b). Therefore, Roche reasons, Congress' failure to include any notice provision in Sec. 216(b) was a deliberate decision by Congress against court-authorized notice. Roche also argues that because Rule 23 was amended in 1966 to provide for class certification and court-authorized notice, we should construe the failure of Congress to make parallel amendments to Sec. 216(b) as signifying congressional hostility to court-authorized notice of actions under Sec. 216(b).
 
 
 30
 It is these two factors, the amendment to Sec. 216(b) and the difference between the "necessarily active" role of the district court in a Rule 23 class action with its "only passive duties and limited jurisdiction" in a Sec. 216(b) action, that were given by the court in Dolan v. Project Construction Corp., 725 F.2d 1263, 1266-68 (10th Cir.1984), as the basis for its conclusion that Sec. 216(b) does not allow for court authorization of notice to potential plaintiffs in an FLSA action. The Dolan court stated that Congress, "[w]hile still providing for collective and representative actions, ... intended to severely limit the burden on the defendant and the participation of the court." Id. at 1267. It thus held that the court lacked power to order discovery of the names and addresses of potential opt-ins and to issue notice to all potential plaintiffs. Id. at 1267-68. The Dolan court, however, did not preclude "a level of reasonable communication" by counsel with those parties s/he could discover without judicial assistance. Id. at 1268.
 
 
 31
 Similar conclusions have been reached by two other courts of appeals. In McKenna v. Champion International Corp., 747 F.2d 1211 (8th Cir.1984), the court, in addition to relying on the 1947 amendment for its holding that the district court could not authorize notice to prospective class members, also held that plaintiff's counsel must be barred from sending such notice on the ground that such solicitation could give rise to ethical violations. Id. at 1214,1216-17.
 
 
 32
 The court held that prohibiting plaintiffs' counsel from sending notice to prospective class members advances the interest underlying Model Code of Professional Responsibility DR 2-103(A) (1979) (a "lawyer shall not * * * recommend employment as a private practitioner of himself * * * to a lay person who has not sought his advice regarding employment of a lawyer."). 747 F.2d at 1215-16. The court analogized "direct-mail solicitation of particular plaintiffs for a particular lawsuit" as approaching the type of in-person solicitation which was not protected by the First Amendment. Id. at 1216.
 
 
 33
 McKenna relied in part on the Ninth Circuit's decision in Kinney Shoe Corp. v. Vorhes, 564 F.2d 859 (9th Cir.1977), which held that the court could not authorize notice and that counsel could not send notice of the pending action to potential opt-ins, reasoning that because members of a Sec. 216(b) class are not bound by the result reached in the litigation case, as are class members in a Rule 23 class, there was no due process need for notice in Sec. 216(b) actions. Id. at 864. The court also reversed the district court's order requiring the employer to furnish an employee list for plaintiffs' use in contacting their colleagues.
 
 
 34
 We do not find persuasive the arguments adopted by these courts. Turning first to the legislative history, there is nothing to suggest that in eliminating representative actions Congress intended to affect what it called the collective action. The 1947 amendments were designed for a different purpose.
 
 
 35
 In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Supreme Court had construed the FLSA as requiring compensation to employees for time spent in the plant before and after their work shifts. In the six months following that decision, more than 1,000 suits were filed seeking over five billion dollars in compensation. See H. Eglit, 2 Age Discrimination Sec. 17.32 n. 5 (1982). In response, Congress enacted the Portal-to-Portal Act of 1947, which "was intended to curtail the numerous suits for unpaid compensation and liquidated damages under the FLSA that were filed after [Anderson ]." Universities Research Ass'n v. Coutu, 450 U.S. 754, 780, 101 S.Ct. 1451, 1466, 67 L.Ed.2d 662 (1981).
 
 
 36
 The Portal-to-Portal Act provided that employers were not liable for compensation to employees for time spent traveling to and from worksites or for other activities conducted prior to or after the employees' "principal" work activity, thus effectively overturning the Supreme Court's contrary interpretation of the FLSA. See 29 U.S.C. Sec. 254 (codifying ch. 52, Sec. 4, 61 Stat. 86). At the same time, Congress made other amendments to the FLSA, among them the repeal of "representative actions" which had allowed non-employee representatives or agents to commence suits on employees' behalf. Portal-to-Portal Act of 1947, Pub.L. No. 49, Sec. 5, 61 Stat. 87.
 
 
 37
 In explaining this amendment, Senator Donnell, who was chairman of the subcommittee which conducted hearings on the amendments, distinguished between representative actions and what he termed collective actions. He explained that the amendments were designed to eliminate the representative action in which "an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the suit." 93 Cong. Rec. 2182 (1947). On the other hand, Senator Donnell stated that "[w]e see no objection" in the collective action, i.e., "a suit by one or more employees for himself and all other employees similarly situated." Id. There is, of course, no question that Sperling's suit falls into this category.
 
 
 38
 Perhaps the most significant evidence that Congress did not intend to preclude notice to class members by the 1947 amendments is the fact that the statute still expressly authorizes a plaintiff to bring the action on behalf of "other employees similarly situated," 29 U.S.C. Sec. 216(b), albeit employees who must opt in to join. The continued authorization for bringing collective or quasi-class actions under the procedural provisions of the FLSA demonstrates Congress' lack of hostility to such actions, if nothing more. However, if a plaintiff could not contact and solicit the consents of other "similarly situated" individuals, the congressionally sanctioned form of action would be meaningless. We agree with the EEOC that "[w]ithout such notice, the statute's explicit approval and authorization of collective actions would be seriously undermined." Amicus Brief at 7-8.
 
 
 39
 Roche places undue significance on Congress' failure to add a notice provision to 29 U.S.C. Sec. 216(b) when Rule 23 was amended in 1966 to so provide. As explained by the Advisory Committee, notice was provided in Rule 23 because there would be a due process problem if absent parties were to be bound without such notice. Fed.R.Civ.P. 23(d)(2) Advisory Committee Note. A class action under Sec. 216(b) cannot bind absent parties, and, in the absence of any other explanation deriving from the legislative history, it seems most plausible that no notice was provided for in Sec. 216(b) because it was not required for due process reasons. That cannot be taken as evidence that Congress intended to bar court-authorized notice in an appropriate case.
 
 
 40
 The district court's rationale in authorizing notice to putative class members and requiring divulgence of their identities followed the analysis articulated by Judge Posner in Woods v. New York Life Ins. Co., 686 F.2d 578 (7th Cir.1982). There the court explained that Sec. 216(b) does more than create the right of permissive joinder already provided by Rule 20 of the Federal Rules of Civil Procedure. Id. at 580. Instead, it continued, the section's authorization of a representative action, "surely must carry with it a right in the representative plaintiff to notify the people he would like to represent that he has brought a suit, and a power in the district court to place appropriate conditions on the exercise of that right." Id. It followed that counsel for a representative plaintiff could seek from the district court an order approving the notice "to protect himself from being accused of stirring up litigation in violation of state law, ... as well as an order directing the defendant, in an appropriate case, to furnish the plaintiff with the names and addresses of potential class members." Id.
 
 
 41
 An examination of Sec. 216(b) yielded a similar conclusion in Braunstein v. Eastern Photographic Labs., 600 F.2d 335 (2d Cir.1978) (per curiam), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979), which held that a district court could authorize notice to potential plaintiffs in an FLSA action. The court concluded that rather than reading the omission of any provision for notice as deliberate, "it makes more sense, in light of the 'opt-in' provision of Sec. 16(b) of the Act, 29 U.S.C. Sec. 216(b), to read the statute as permitting, rather than prohibiting notice in an appropriate case." Id. at 336. The court emphasized both the "broad remedial purpose" of the FLSA and the "interest of the courts in avoiding multiplicity of suits." Id.
 
 
 42
 More recently, in United States v. Cook, 795 F.2d 987, 991-93 (Fed.Cir.1986), that court rejected the contention that the legislative history of the 1947 amendments to Sec. 216(b) signified that Congress did not intend to require employers to assist in providing notice to potential plaintiffs. The court in Cook concluded that the district court did have the power to issue a discovery order directing the defendant to release employees' names and addresses to "facilitate" notice of a pending FLSA action. Id. at 993.
 
 
 43
 We thus agree with those courts that have held that the silence of the legislative history on the question of notice to class members together with the continued congressional sanction for actions brought under the FLSA, and thereby the ADEA, on behalf of similarly situated persons must be taken to mean that Congress has imposed no bar to court-authorized notice.
 
 
 44
 We consider next whether there are any other reasons which would counsel us to impose such a prohibition as a policy matter. It is now clear that the ethical considerations relied on in McKenna do not withstand the Supreme Court's decision in Shapero v. Kentucky Bar Association, --- U.S. ----, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). In Shapero, the Court held that the First Amendment's protection of commercial speech encompasses targeted direct-mail solicitation by lawyers for pecuniary gain. It follows that communications which the district court finds to be truthful and nondeceptive, designed to inform putative class members of the pendency of the suit and their opportunity to consent to join, cannot be barred under the guise of being unprofessional or unethical.
 
 
 45
 As the Amicus Brief of the EEOC points out, there are policy reasons favoring court-authorized notice in ADEA cases. Not only does such communication serve the remedial purpose of the ADEA, but court-authorized notice allows the court to regulate the content of the notice that is sent out. Indeed, had the terms and conditions of the initial notice been presented for court review much of the present dispute resulting from some of the unfortunate language used in the March 7th letter would have been avoided. Such notice also allows the court to set cut-off dates for receipt of consents, and helps avoid the judicial burden of a multiplicity of individual suits.
 
 
 46
 We thus agree with the district court's conclusion that there is no legal impediment to court-authorized notice in an appropriate case. It is, of course, within the discretion of the district court whether and how to implement such notice. We assume that the district courts will exercise caution that notices approved by the courts will not give the erroneous impression that maintenance of the action has a judicial imprimatur of approval. In this respect, the notice necessarily differs from that in a Rule 23 action. In this case, the district court rejected plaintiffs' request that the notice be sent on court letterhead. See also Woods, 686 F.2d at 582 (holding that the court-authorized notice may not be on judicial letterhead or signed by a judicial officer). In light of the district court's inclusion of the language that "the court has taken no position regarding the merits of the plaintiffs' claims or of Roche's defenses," we do not reach the question whether the statement that the notice has been "authorized" by the court should have been included. Sperling, 118 F.R.D. at 417. Ordinarily, the better practice would be to exclude any reference in the notice indicating it had been approved or authorized by the court.
 
 
 47
 Roche contends that since over 400 plaintiffs out of a potential class of 600 have already opted in, there was no need for additional court-authorized notice to be sent out in this case. The plaintiffs respond that their success in soliciting opt-ins should not be held against them, and should not bar sending notice to others who may not have learned of the suit. See Allen v. Marshall Field & Co., 93 F.R.D. 438, 443 (N.D.Ill.1982) ("That some potential claimants have [already] learned of their rights under the ADEA and [of] this action is no reason to depend upon informal means of communication to get this information to other members of the class.").
 
 
 48
 We see no reason to extend our jurisdiction in this appeal certified under 28 U.S.C. Sec. 1292(b) beyond the question of the court's authority to facilitate notice to putative class members by authorization of the communication. Assuming that we have the power to do so, we do not choose to reach the issue of whether the court abused its discretion by approval of the form of notice in this case.
 
 V.
 Conclusion
 
 49
 In summary, we hold that we have no jurisdiction over Roche's appeal of the district court's denial of its motion to invalidate the consents already filed, and will dismiss that appeal. In the certified appeal, we hold that the district court does have the power to authorize notice to be sent to plaintiffs in an opt-in class filed under the Age Discrimination in Employment Act and to review the content of such notice before it is communicated to the class members. We will, therefore, affirm the portion of the district court's order that so holds and remand this action for further proceedings consistent with this opinion. Costs to be assessed against appellant.
 
 
 
 [1]
 A "matter in abatement" is generally considered to involve "nonjurisdictional motions which, if granted, would result in the dismissal of an action without prejudice to its reconsideration when refiled in another forum or another pleading." Coastal Steel, 709 F.2d at 196. As we explained in Spudnuts, 735 F.2d at 771, if the district court in Coastal Steel had dismissed the action as requested because it belonged in a foreign forum, this would have defeated the action and required it to be recommenced, thereby qualifying it as a "matter in abatement." In contrast, in Spudnuts we held that an order transferring a case to another forum within the federal system was not a matter in abatement because it did not require recommencement of the suit. 735 F.2d at 771